**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Yi Hu,**

**Plaintiff,**

**-against-**

**Edlow et al.,**

**Defendants.**

**1:26-cv-02354 (JHR) (SDA)**

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE JENNIFER H. REARDEN, UNITED STATES DISTRICT JUDGE:**

Plaintiff Yi Hu ("Plaintiff" or "Hu") brings this action seeking to compel Defendants Joseph B. Edlow, Director of the United States Citizenship and Immigration Services ("USCIS"); Angelica Alfonso-Royals, Deputy Director of USCIS; Alissa Emmel, Chief of the Immigrant Investor Program Office; and USCIS (collectively, the "Defendants") "to adjudicate Plaintiff's pending Form I-526E petition and related applications, including his Forms I-485 and I-131." (Compl., ECF No. 1, Prayer for Relief, at p. 23.) Pending before the Court is Defendants' motion, pursuant to Rules 12(b)(1) and 12(b)(6), to dismiss Plaintiff's claims. (*See* Defs.' Not. of Mot., ECF No. 10.) For the reasons set forth below, it is respectfully recommended that Defendants' motion to dismiss be GRANTED and that this action be dismissed without prejudice.

## BACKGROUND OF EB-5 PROGRAM

This action primarily concerns Hu's Form I-526E petition under the EB-5 Program. (*See* Compl. ¶¶ 21-50.) Thus, an overview of the EB-5 Program is helpful to understanding Hu's allegations.

The Immigration and Nationality Act permits foreign nationals to obtain Lawful Permanent Resident ("LPR") status by applying for an employment based, fifth-preference ("EB-5") visa. *See* 8 U.S.C. § 1153(b)(5). During the relevant period, a foreign national could obtain an EB-5 visa by investing at least $1,050,000 in a "new commercial enterprise"[1] ("NCE") that results in the creation of at least ten full-time jobs for those eligible to work in the United States. *Id*. § 1153(b)(5)(C)-(D). If a foreign national invests in a "targeted employment area"[2] ("TEA"), the investment is reduced to $800,000. *See id*. § 1153(b)(5)(C)(ii).

The first step to obtain an EB-5 visa is to file a Form I-526E,[3] Immigrant Petition by Regional Center Investor, with USCIS. *See* 8 C.F.R. § 204.6(a); *see also* USCIS, I-526E, https://perma.cc/GS54-QDCQ (last accessed Aug. 29, 2026). Once approved, an EB-5 petitioner located in the United States can apply for two-year conditional lawful permanent resident status using a Form I-485, Application to Register Permanent Residence or Adjust Status. *See* 8 U.S.C. §§ 1186b(a)(1), 1255(n); 8 C.F.R. §§ 216.1, 245.2. Upon approval of the Form I-485 application, the petitioner becomes a two-year conditional permanent resident. *See* 8 U.S.C. § 1186b(a)(1). At the conclusion of that two-year conditional period, the petitioner may file a Form I-829, Petition by Investor to Remove Conditions on Permanent Resident Status. *See* 8 U.S.C. §

[1] "The term 'new commercial enterprise' means any for-profit organization formed in the United States for the ongoing conduct of lawful business, including . . . limited liability company . . . that receives, or is established to receive, capital investment from investors under [the relevant statutory provision." 8 U.S.C. § 1153(b)(5)(D)(iv).

[2] "The term 'targeted employment area' means, at the time of investment, a rural area or an area designated by the Secretary of Homeland Security . . . as a high unemployment area." 8 U.S.C. § 1153(b)(5)(D)(viii).

[3] An applicant also could file a Form I-526. Form I-526 is used for standalone, direct investors, *see* I-526, Immigrant Petition by Standalone Investor, https://perma.cc/L4DB-N9UT (last accessed Aug. 29, 2026), whereas Form I-526E is used by investors participating in a USCIS-approved Regional Center program.

1186b(d)(2); 8 C.F.R. § 216.6(c). If the Form I-829 petition is approved, the petitioner obtains permanent resident status without conditions in the United States.[4] *See* 8 U.S.C. § 1186b(c)(3); 8 C.F.R. § 216.6(d)(1).

"Congress restructured the regional center program in the EB-5 Reform and Integrity Act of 2022 ('RIA')." *Nayak v. Edlow*, No. 26-CV-01169 (EMC), 2026 WL 2548618, at *1 (N.D. Cal. Aug. 28, 2026). "The RIA repealed the prior authorizing statute, removed the word 'pilot' from regional center 'pilot programs,' and relocated the governing provisions into 8 U.S.C. § 1153(b)(5)." *Id*. The RIA reserves portions of the annual EB-5 visa allocation for rural investment (20%), high-unemployment-area investment (10%) and infrastructure investment (2%). *See* 8 U.S.C. § 1153(b)(5)(B)(i). In addition, the RIA provides that the Secretary of Homeland Security (the "Secretary") "shall prioritize the processing and adjudication of petitions for rural areas" and that the Secretary "may process petitions in a manner and order established by the Secretary[.]" *Id*. § 1153(b)(5)(E)(ii)(I)-(II).

"[T]he RIA addressed adjudication speed through the fee structure." *Nayak*, 2026 WL 2548618, at *2. "Section 106(a) required the Department of Homeland Security to complete a fee study on or before March 15, 2023." *Id*. "Section 106(b) then directed that fees be set at a level sufficient to complete adjudications, on average, within periods ranging from 90 to 240 days, depending on the petition type." *Id*. "For TEA petitions, the target is 120 days." *Id*. (citing RIA § 106(b)(5)). "Separately, and predating the RIA, 8 U.S.C. § 1571(b) expresses Congress's

---

[4] A lawful permanent resident or conditional permanent resident may apply for a reentry permit to allow the applicant reentry into the United States upon return from abroad for a two-year period. *See* 8 C.F.R. §§ 223.1(a), 223.2(b)(1), 223.3(a)(1). Form I-131 is used to apply for a re-entry permit. *See* USCIS, I-131, Application for Travel Document, https://perma.cc/2J94-2N39 (last accessed Aug. 29, 2026).

intention that processing of immigration benefit applications be completed 'not later than 180 days after the initial filing of the application.'" *Id*.

USCIS has published on its website a description of an "inventory management" approach to Form I-526 petitions and Form I-526E petitions, effective March 30, 2026, which provides, as follows:

> [W]e will generally assign Form I-526 and Form I-526E under a first in, first out (FIFO) approach that seeks to balance these considerations by:
>
> - Assigning Form I-526E petitions for review after we make official decisions on the associated Form I-956F;
> - Assigning Form I-526E rural petitions by a FIFO approach as priority for anticipated fiscal year rural visa usage; and
> - Assigning other Form I-526E and post-RIA Form I-526 petitions by a FIFO approach after the Form I-526E rural queue is empty or when we determine we have made decisions on enough petitions from that queue.

USCIS, EB-5 Questions and Answers, https://perma.cc/8V96-WQZN (last accessed Aug. 29, 2026). USCIS "may also group the petitions in the non-rural Form I-526E and post-RIA Form I-526 petition queue by visa subcategory (rural post-RIA Form I-526 petitions, high unemployment area, infrastructure, and unreserved) and assign petitions by sub-queue in FIFO order to facilitate usage of reserved visas in line with congressional intent." *Id*.

**RELEVANT FACTUAL ALLEGATIONS**[5]

On February 27, 2025, Hu, a New York resident, invested $800,000 into Northern Blvd Investor Funding LLC, an approved NCE, and filed a Form I-526E. (Compl. ¶¶ 2, 8.) On March 26, 2025, Hu filed a Form I-485 and a Form I-131. (*Id*. ¶ 5.) Yet, as of March 3, 2026, when Hu filed

[5] The factual allegations herein are drawn from the Factual Allegations section of the Complaint. The Court accepts these allegations as true and draws all reasonable inferences in Plaintiff's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

his Complaint in this action, Defendants had failed to adjudicate Hu's petition and applications.[6] (*See id*. ¶¶ 66, 69, 72.)

## PROCEDURAL HISTORY

On March 3, 2026, Plaintiff commenced this action, alleging that Defendants had unreasonably delayed in acting upon his petition and applications. (*See* Compl. ¶ 7.) In his Complaint, Plaintiff sought a Writ of Mandamus and/or an Order, pursuant to the Administrative Procedure Act ("APA"), compelling Defendants to adjudicate his pending Form I-526E petition and related applications, including his Forms I-485 and I-131,[7] within thirty (30) days of the Court's Order. (*See id*., Prayer for Relief, at p. 23.)

On May 26, 2026, Defendants filed their motion to dismiss that currently is before the Court. (*See* Defs.' Not. of Mot.; *see also* Def.' Mem., ECF No. 11.) On May 28, 2026, Plaintiff filed his memorandum in opposition. (*See* Pl.'s Opp. Mem., ECF No. 12.) On June 4, 2026, Defendants filed their reply memorandum. (*See* Defs.' Reply, ECF No. 13.) On June 24, 2026, without Court permission, Plaintiff filed a proposed sur-reply memorandum. (*See* Pl.'s Sur-Reply, ECF No. 14.) On August 14, 2026, Defendants' pending motion was referred to the undersigned for a report and recommendation. (*See* Am. Order of Ref., ECF No. 15.)

## DISCUSSION

The first ground raised by Defendants in their motion to dismiss is that this Court lacks subject matter jurisdiction. Defendants contend that 8 U.S.C. § 1252(a)(2)(B)(ii) strips the Court

---

[6] On June 3, 2026, while this action was pending, USCIS granted Hu's I-131 application for a travel document. (*See* 6/3/26 Approval Notice, ECF No. 13-1.) Thus, Plaintiff's request for an Order compelling Defendants to adjudicate Plaintiff's Forms I-131 is moot.

[7] As noted in footnote 6, *supra*, Plaintiff's I-131 application already has been granted.

of jurisdiction because § 1153(b)(5)(E)(ii)(II) provides that the Secretary "may process petitions in a manner and order established by the Secretary" — language that Defendants read as committing the pace of EB-5 visa adjudication to the unreviewable discretion of the Secretary. (*See* Defs.' Mem. at 9-12.) However, courts in the Second Circuit have found that § 1252(a)(2)(B)(ii) does not divest a court of subject matter jurisdiction over a claim that the adjudication of an application has been unreasonably delayed. *See Xiangmin Liao v. Chertoff*, No. 07-CV-02041 (SJF) (ARL), 2008 WL 11449305, at *4 (E.D.N.Y. Aug. 20, 2008) (citing cases). Nevertheless, because (as explained below), Plaintiff's claim fails at the pleading stage for reasons beside jurisdiction, the Court need not resolve the jurisdictional question.

The Court considers below Defendants' second ground for dismissal, under Rule 12(b)(6), for failure to state a claim. (*See* Defs.' Mem. at 12-20.)

## LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

The Court "must accept as true all of the factual allegations contained in the complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "In determining the adequacy of a claim under Rule 12(b)(6), a court is generally limited to 'facts stated on the face of the complaint,'

'documents appended to the complaint or incorporated in the complaint by reference,' and 'matters of which judicial notice may be taken.'" *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 48 (S.D.N.Y. 2019) (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

## DISCUSSION

The Court first considers Plaintiff's APA claim, followed by Plaintiff's mandamus claim.

### I. APA Claim (Count Two)

The APA requires that, "within a reasonable time," an "agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Where agency action is "unlawfully withheld or unreasonably delayed," a reviewing court shall "compel" such action. *Id*. § 706(1). "There is 'no *per se* rule as to how long is too long' to wait for agency action, but a reasonable time for agency action is typically counted in weeks or months, not years." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)). In assessing the reasonableness of an agency's delay in adjudicating a matter before it, courts in this Circuit rely upon the considerations set out by the D.C. Circuit in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). *See Nat. Res. Def. Council v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013). The six factors of the *TRAC* standard are as follows:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking

> behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal quotation marks and citations omitted).

"Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). The Court's "role on a motion to dismiss is 'not determining whether there has been an unreasonable delay,' but rather 'determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay.'" *Kaur v. Mayorkas*, No. 22-CV-04514 (PAE), 2023 WL 4899083, at *13 n.6 (S.D.N.Y. Aug. 1, 2023) (quoting *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021)).

"A plaintiff need not 'demonstrat[e] that all of these factors weigh in that party's favor' to prevail on an unreasonable delay claim." *Chang v. United States Citizenship & Immigr. Servs.*, No. 25-CV-01504 (PKC), 2026 WL 654359, *2-3 (E.D.N.Y. Mar. 9, 2026) (citing *Abasov v. United States Citizenship & Immigr. Servs.*, No. 25-CV-01793 (PKC), 2025 WL 3706663, *3 (E.D.N.Y. Dec. 22, 2025)). "At the same time, a court may refuse to grant relief, even though all the other factors considered in *TRAC* favor it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Id*. (cleaned up).

Applying the *TRAC* factors, the Court finds that Plaintiff has not plausibly alleged an unreasonable delay APA claim. "The first two *TRAC* factors focus on the extent of and reasons for the agency delay," *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 816 (D.C. Cir. 2024), and, as a consequence, are "typically considered together." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). As for *TRAC* factor one, "the time agencies take to make decisions must be

governed by a 'rule of reason.'" *TRAC*, 750 F.2d at 80 (quoting *Potomac Elec. Power Co. v. ICC*, 702 F.2d 1026, 1034 (D.C. Cir. 1983)). "In assessing whether an agency follows a rule of reason, [courts] evaluate the length of the delay in light of 'the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'" *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Mashpe*, 336 F.3d at 1102). The D.C. Circuit "ha[s] described this as the 'most important' consideration under *TRAC*." *Afghan & Iraqi Allies*, 103 F.4th at 816 (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)). "For *TRAC* factor two, [courts] consider whether Congress set a deadline for agency action." *Da Costa*, 80 F.4th at 344. Insofar as Congress indicates the speed with which it expects the agency to proceed to its decision, "[t]he second TRAC consideration thus 'gives content to the first.'" *Afghan & Iraqi Allies*, 103 F.4th at 816 (quoting *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999)).

Applying the first *TRAC* factor, the Court finds that the length of time that USCIS processes I-526E petitions is governed by a rule of reason, since the approach taken by USCIS reflects an identifiable rationale grounded in the applicable provisions of the RIA and resource considerations. USCIS has articulated a FIFO-based processing policy that became effective on March 30, 2026 (*see* Background of EB-5 Program section, *supra*), and indeed the *Da Costa* court held a predecessor version of that policy to constitute a rule of reason. *See Da Costa*, 80 F.4th at 340-43.[8] Thus, the first *TRAC* factor favors Defendants.

---

[8] The Court acknowledges the Opinion and Order in *Lyons v. United States Citizenship & Immigr. Servs.*, where the Court found that "it would be premature for the Court to conclude, on a Rule 12(b)(6) motion to dismiss, that USCIS's processing times for I-526 petitions are actually governed by a rule of reason." No. 21-CV-03661 (JGK), 2023 WL 144879, at *4 (S.D.N.Y. Jan. 10, 2023). The Court notes that *Lyons* preceded the D.C. Circuit's Opinion in *Da Costa*. In addition, *Lyons* is factually distinguishable since, in *Lyons*,

The second *TRAC* factor asks whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80. With respect to the second *TRAC* factor, Plaintiff emphasizes that "Congress identified 240 days for regional-center investor petitions and 120 days for such petitions involving TEA investments" and that "Plaintiff's receipt notice identifies a TEA investment." (Pl.'s Opp. Mem. at 13.) The D.C. Circuit found that "even though [similar] language [was] insufficient to set a deadline, we can look to Congress's aspirational statement as 'a ruler against which the [agency's] progress must be measured.'" *Da Costa*, 80 F.4th at 344 (alteration in original) (quoting *In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 274 (D.C. Cir. 2020)). Consequently, "[t]his factor somewhat favors Plaintiff[ ], as [he] ha[s] waited longer than [120] days." *Id*.

"Courts analyze TRAC factors three and five together, looking to the possible effects a delay has had on a plaintiff's health and welfare and to the 'nature and extent of the interests prejudiced by delay.'" *Arabzada v. Donis*, 725 F. Supp. 3d 1, 16 (D.D.C. 2024) (quoting *TRAC*, 750 F.2d at 80). "[T]he analysis of the third and fifth TRAC factors requires careful consideration and weighing of the circumstances of a case." *Lyons*, 2023 WL 144879, at *8.

Plaintiff alleges that he "suffers ongoing prejudice to his ability to plan career and family matters and to travel." (Compl. ¶ 58.) However, each of those effects is inherent to the process and to Plaintiff's status as a visa applicant. *See Sheiner v. Mayorkas*, No. 21-CV-05272 (ER), 2023 WL 2691580, at *9 (S.D.N.Y. Mar. 29, 2023). Plaintiff does not allege any facts particular to him

"plaintiff filed his I-526 petition roughly 33 months before USCIS moved to dismiss, and he ha[d] awaited an adjudication of that petition for 39 months (or over three years) to [the] date [of the court's decision]." *Id.* Here, by contrast, Plaintiff filed his I-526E petition 14 months before Defendants moved to dismiss and has been awaiting an adjudication of that petition for less than 18 months.

that demonstrate that the delay in adjudicating his application has had an impact on his health and welfare. Thus, the third and fifth *TRAC* factors favor Defendants.

The fourth *TRAC* factor requires courts to "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. "An agency 'is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.'" *Chang*, 2026 WL 654359, at *4 (quoting *Kaur*, 2023 WL 4899083, at *11). "For the Court 'to demand an accelerated protocol, [it] would have to intrude into a quintessentially administrative function, and in the process reconfigure the agency's priorities' by ordering it to expedite an application merely because a suit has been filed." *Id*. (quoting N-N v. Mayorkas, 540 F. Supp. 3d 240, 261 (E.D.N.Y. 2021)). Thus, the fourth factor favors Defendants.[9]

The sixth and final *TRAC* factor provides that "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'" *TRAC*, 750 F.2d at 80 (quoting *Pub. Citizen Rsch. Grp. v. Comm'r, Food & Drug Admin*., 740 F.2d 21, 34 (D.C. Cir. 1984)). That Factor is neutral absent "plausible evidence of bad faith." *Afghan & Iraqi Allies*, 103 F.4th at 820. Thus, where, as here, "Plaintiff does not rely on a subjective bad-faith theory" (Pl.'s Opp. Mem. at 16), the sixth factor is neutral.

Taking all six *TRAC* factors together, Plaintiff has not stated a claim of unreasonable delay under the APA. In other cases, delays in visa processing of even longer duration than that

---

[9] As Defendants note in their reply memorandum regarding the fourth factor, although Plaintiff contends he is not seeking "improper line-skipping," the five I-526E petitions that Plaintiff argues are for the same financing vehicle in which he invested $800,000 took longer to gain approval than the 11 months he waited before filing his Complaint, and one took 30 months for approval. (*See* Defs.' Reply at 3-4 (referring to Pl.'s Opp. Exhibits, ECF No. 12-1).)

presented here have resulted in the same conclusion. *See*, *e.g.*, *Da Costa*, 80 F.4th at 342 (four-and-a-half year processing delay); *Cheng v. Garland*, No. 24-CV-03465 (JLR), 2024 WL 5009146, at *5 (S.D.N.Y. Dec. 6, 2024) (processing delay of approximately three years and eight months); *see also Boussana v. Johnson*, No. 14-CV-03757 LGS, 2015 WL 3651329, at *8 (S.D.N.Y. June 11, 2015) ("Although 'courts have generally found delays of four years or less not to be unreasonable[,] . . . many courts applying the *TRAC* factors have declined to find that delays exceeding six years are reasonable.'" (quoting *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071-72 (N.D. Cal. 2014)).

Accordingly, it is recommended that Count Two be dismissed.

**II. <u>Mandamus Act</u>**

The Mandamus Act provides, in relevant part, that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. To establish a claim for unreasonable delay pursuant to the Mandamus Act, a plaintiff must show: "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008). "The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of a clear nondiscretionary duty." *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) (cleaned up). Moreover, "[w]here mandamus relief is duplicative of an APA claim, it must be dismissed." Kaur, 2023 WL 4899083, at *13 (citing Sheiner, 2023 WL 2691580, at *10; *Benzman*, 523 F.3d at 132-33).

In the present case, Plaintiff seeks relief pursuant to both the Mandamus Act and the APA. Because the APA provides Plaintiff with an adequate alternative avenue for relief, he cannot satisfy the third requirement for mandamus relief. *See Qazi v. Rubio*, No. 26-CV-02668 (JAV), 2026 WL 1584662, at *11 (S.D.N.Y. June 3, 2026) ("[T]he availability of an APA claim leaves [p]laintiff unable to establish that there is no other adequate remedy available."). This remains true even where a "[p]laintiff failed to adequately plead that alternative remedy." *Esghai v. U.S. Dep't of State*, No. 24-CV-02993 (PAE), 2024 WL 4753799, at *7 (S.D.N.Y. Nov. 12, 2024) (quoting *Cohen v. Jaddou*, No. 21-CV-05025 (PAC), 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023). This conclusion is consistent with Second Circuit precedent. *See Sharkey v. Quarantillo*, 541 F.3d 75, 93 (2d Cir. 2008) (affirming dismissal of mandamus claim that duplicated relief sought under APA).

Accordingly, it is recommended that Count One be dismissed.

**CONCLUSION**

For the reasons set forth above, it is respectfully recommended that Defendants' motion to dismiss the Complaint be GRANTED. It is further recommended that the dismissal be without prejudice to Plaintiff bringing a future action should Plaintiff's outstanding petition and application remain pending for a period that constitutes an unreasonable delay.

Dated: September 1, 2026
New York, New York

**STEWART D. AARON**
**United States Magistrate Judge**

* * *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Rearden.

**THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).